IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
May 3, 2011 Session

**CHARLES EDWARD CLIFF v. STATE OF TENNESSEE**

**Direct Appeal from the Circuit Court for Gibson County**
**No. 17192      Clayburn L. Peeples, Judge**

**No. W2010-01847-CCA-R3-PC  - Filed November 7, 2011**

The Petitioner, Charles Edward Cliff, appeals the denial of post-conviction relief, contending that (1) his guilty plea was not knowingly and voluntarily entered and (2) he received ineffective assistance of counsel.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which NORMA MCGEE OGLE, J., joined.  J.C. MCLIN, J., (mortuus).

Brandon L. Newman, Trenton, Tennessee, for the Petitioner-Appellant, Charles Edward Cliff.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Garry G. Brown, District Attorney General; and Stephanie J. Hale, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

The Petitioner was indicted in this cause for possession of over .5 grams of cocaine with the intent to deliver or sell, a Class B felony, as well as for assault, resisting arrest, and evading arrest, Class A misdemeanors.  On May 13, 2009, after the jury was chosen for trial, the Petitioner entered a guilty plea in the Circuit Court for Gibson County to possession of less than .5 grams of cocaine with the intent to deliver or sell, a Class C felony, in exchange for a sentence of six years.  As a part of the plea agreement, the other counts in the indictment as well as charges in separate indictments for three domestic assaults, vandalism, and DUI were dismissed.  The Petitioner then filed a direct appeal pro se, which was dismissed by this court on the basis that the Petitioner waived the right to appeal at the time

he entered his guilty plea and that the exceptions pursuant to Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure were not applicable. State v. Charles Edward Cliff, No. W2009-01219-CCA-R3-CD, order dismissing appeal (Tenn. Crim. App. Dec. 2, 2009). The Petitioner then filed a timely pro se petition for post-conviction relief. Following the appointment of counsel, the Petitioner filed an amended post-conviction petition. The State responded. Following an evidentiary hearing, the court entered an order denying post-conviction relief on August 31, 2010. The Petitioner then filed a timely notice of appeal.

## FACTUAL BACKGROUND

We will briefly summarize the relevant facts in order to fully explain the issues on appeal. The arresting officer initially observed the Petitioner at a gas station. The Petitioner left the gas station, and the officer then saw that the Petitioner's brake light was not functioning. The Petitioner stopped at a second gas station, and the officer pulled his patrol car behind him, informed him that his brake light was not working, and asked him for his driver's license. The Petitioner retrieved his license from inside the car and appeared very nervous. Then, the officer asked the Petitioner if he had any drugs or weapons on his person, and the Petitioner answered that he did not. The officer told him not to move, and the Petitioner started repeatedly saying, "You ain't gonna do this again to me." When the officer started to conduct a pat down, the Petitioner fled through the parking lot. The officer chased him, grabbed him, and told him to stop. However, the Petitioner began wrestling with the officer and resisted the officer's attempts to arrest him. The Petitioner fled a second time, and the officer tackled him. The officer and the Petitioner continued to wrestle until a back up patrol unit arrived. The officer sustained injuries to his shoulder during the altercation, which required surgery.

**Post-Conviction Hearing.** Trial counsel and the Petitioner were the only witnesses to testify at the post-conviction hearing. Transcripts from the plea submission hearing, the preliminary hearing, and one of the suppression hearings as well as the guilty plea form and the Petitioner's list of potential witnesses were entered as exhibits.

Trial counsel testified that he was appointed as the Petitioner's public defender after the Petitioner's case arrived in circuit court. He then filed a suppression motion that challenged the Petitioner's stop by Officer Steven Howe because of a non-functioning brake light. Trial counsel said that initially there were two people who were willing to testify that the Petitioner's brake lights were functioning properly at the time of the stop. However, one of these individuals, Ben Elliot, changed his testimony by the time the suppression motion was heard. Trial counsel stated that the second witness, Odell Coleman, testified at the suppression hearing that the Petitioner's lights were working at the time of Officer Howe's

stop.[1]

Trial counsel stated that once the suppression motion was denied,[2] he believed it would be nearly impossible to receive a favorable outcome at trial because the recovered drugs would be admitted. At that point, trial counsel told the Petitioner that he believed he would have to appeal his case in order to obtain relief. He explained:

> I still thought that the only way he was going to win ultimately on the issues would be at an appellate level. Of course, to get there he was going to have to go through a trial, be found guilty and be sentenced. When he was offered something that appeared to him to be less and get five other cases, I believe, dismissed – it may have only been four, he and his mother sat, talked it over, and to the best of my knowledge he made the decision by himself, with his mother being present, what he was going to do.

Trial counsel stated that he discussed the sentence range for each of the charged offenses with the Petitioner. He and the Petitioner discussed the elements for each offense, the possible defenses, and whether the State would be able to prove each of the elements. They also reviewed the discovery received from the State. He acknowledged that the Petitioner claimed to have numerous witnesses that were helpful to his case. However, trial counsel said he explained that if these witnesses saw things that happened after the initial stop they might be helpful in a lawsuit against the city but would not be helpful in the criminal case. Trial counsel acknowledged that Officer Howe was terminated from the police department before the Petitioner's case was concluded; however, he stated that he did not try to obtain any public records regarding the termination. Although he did not feel Officer Howe was going to be credible, trial counsel said that he believed the officer's testimony "wasn't going to make any difference." Trial counsel said that he and the Petitioner communicated mainly through face-to-face discussions at his office, rather than through correspondence or telephone calls. Although he did not know whether the Petitioner was in special education classes in high school, he did not feel that a forensic evaluation was necessary in this case.

Regarding the Petitioner's plea agreement, trial counsel stated that he believed that

---

[1]The record indicates that there were three different suppression hearings before the trial court decided to deny the Petitioner's motion to suppress the drugs recovered in his case. However, only the transcript from the first suppression hearing was included in the record on appeal.

[2]There is no order in the technical record denying the Petitioner's motion to suppress the drugs recovered in his case.

the offer accepted by the Petitioner was a good one because it dismissed all the charges except one in the indictment and allowed the Petitioner to receive a much less severe sentence than he would have received if he had been convicted at trial. He said that he did not specifically remember going through the plea agreement with the Petitioner but that his procedure was to read the plea form to all of his clients, whether they could read or not. Trial counsel emphatically stated that the Petitioner "absolutely . . . understood what he was doing." He also maintained that he informed the Petitioner that upon entry of his guilty plea his case would end, and any issues regarding suppression would not be available. He added that the trial court also made it extremely clear that the entry of the Petitioner's guilty plea foreclosed any appeal. When asked if the State was willing to allow a certified question on appeal regarding the suppression issue, he stated:

> I don't have any specific recall of that being discussed. I think it was. I don't think the State was willing to do that, particularly if they were going to dismiss four other cases. They don't favor, apparently, certified questions anyway and they certainly, I don't feel, would have made [the Petitioner] that kind of an offer to have dismissed all those other charges because – I just don't think they would have done that.

He believed it was worth not pursuing the certified question in order to have the other three counts of the indictment in this case as well as the five other charges in separate indictments dismissed. In addition, he noted that the State had filed a notice to enhance the Petitioner's sentence, which meant that the Petitioner would have been facing significantly longer sentences at trial. Trial counsel stressed that the Petitioner was well-advised of his options at the time he decided to plead guilty and that the Petitioner himself decided to enter the guilty plea.

Trial counsel stated that although the Petitioner had previously informed him in writing that he wished to proceed to trial, the Petitioner changed his mind and wanted to accept the State's offer shortly before the trial. However, on his trial date, the Petitioner stated that he wanted to proceed to trial. The Petitioner then attended an in camera conference with the trial court, the State, and defense counsel present. Following this conference, the Petitioner discussed the matter with his mother. After the selection of the jury, the Petitioner made the final decision to accept the plea agreement. Trial counsel stated that the Petitioner entered a best interest plea so that he would not have to acknowledge his guilt. He noted that many of his clients often changed their minds about entering guilty pleas.

The Petitioner testified that from the very beginning trial counsel pressured him to plead guilty because he believed he would not be successful at trial. He also claimed that

-4-

trial counsel failed to investigate whether Officer Howe, the arresting officer, was telling the truth about the legality of the stop. He further stated that he had given trial counsel a list of twenty potential witnesses but that trial counsel refused to contact any of these witnesses. He added that trial counsel did not subpoena any of his witnesses for trial. The Petitioner stated that at one of the pre-trial hearings, two witnesses testified that his brake lights were operational at the time of his stop and that on his trial date, he believed that he was returning to court so that Officer Howe could be questioned about the brake lights. The Petitioner stated that he did not understand that he was giving up his right to appeal at the time his entered his guilty plea. He stated:

> [W]e went in the Judge's Chambers and I asked – I said, "Look, I haven't done nothing wrong." I said, "I've worked too hard to get my kids." I said, "I ain't [sic] done nothing wrong. Can ya [sic] give me probation or something so I won't lose my kids." The Judge looked at [the State] like it was all right and [trial counsel] told me – I mean, I didn't have a chance so we come [sic] back out. Somehow, I don't know how it was, somehow the Judge said something about an appeal. I know I heard him say he would let me appeal it. That's when he was talking about I talked to my mom and my girlfriend. I didn't talk to them here. I went outside. I said, "Ain't [sic] no way. He's telling me I'm going to get 8 to 12 years, but the Judge said I can appeal it." I said, "That's my only way," because I tried to get the Judge in 2007 to let me hire my own attorney . . . . That's why I came back in here and decided I was going to go on and sign [the plea agreement] so I could do that appeal that the Judge gave me – I mean said I could get, an appeal.

On cross-examination, the Petitioner acknowledged that all twenty of his witnesses related to the suppression motion, which had already been denied by the trial court. The Petitioner admitted that he informed the trial court that he was satisfied with trial counsel's representation at the time he entered his guilty plea.

The Petitioner stated that he attended special education classes in high school because of his problems with reading comprehension. He stressed that he did not understand that he was waiving his right to appeal the suppression issue at the time he entered his guilty plea. He asserted that the trial court's statements to him during the in camera conference made him believe that he could appeal the suppression issue after he pleaded guilty.

## ANALYSIS

**Standard of Review.** Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a

constitutional right. T.C.A. § 40-30-103 (2006). The Tennessee Supreme Court has held:

> A post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. When reviewing factual issues, the appellate court will not re-weigh or re-evaluate the evidence; moreover, factual questions involving the credibility of witnesses or the weight of their testimony are matters for the trial court to resolve. The appellate court's review of a legal issue, or of a mixed question of law or fact such as a claim of ineffective assistance of counsel, is de novo with no presumption of correctness.

Vaughn v. State, 202 S.W.3d 106, 115 (Tenn. 2006) (internal quotation and citations omitted). "The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence." Id. (citing T.C.A. § 40-30-110(f); Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006)). Evidence is considered clear and convincing when there is no serious or substantial doubt about the accuracy of the conclusions drawn from it. Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) (citing Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).

**I. Voluntariness of Guilty Plea.** The Petitioner argues that his guilty plea was not knowingly and voluntarily entered because he was inappropriately questioned by trial counsel and the trial court during an in camera conference that occurred prior to entering his plea of guilt. He also claims that the trial court's statements following the in camera conference prevented him from realizing that he would be giving up his right to appeal the suppression issue if he pleaded guilty. Moreover, he claims that the State, during this conference, misrepresented that he would be paroled after serving thirty percent of his sentence under the terms of the plea agreement. In response, the State argues that the law and the record do not support the Petitioner's claims. We agree.

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been

made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Petitioner first claims that his guilty plea was not knowingly and voluntarily entered because of inappropriate questioning by trial counsel and the trial court during the camera conference. However, the Petitioner does not cite to particular portions of the transcript from this conference that were improper. Instead, he asserts the following in his brief: "It is not the argument of [the Petitioner] that the Trial Court or District Attorney's office intentionally mislead [sic] [the Petitioner], but that [the Petitioner] could not have made a knowing and voluntary plea after being placed in the position of being questioned by his own Attorney and the Trial Court in chambers prior to his trial." In support, the Petitioner then cites only to his testimony from the post-conviction hearing:

> . . . [S]o we went in there and kept on and what really done it . . . . [W]e went in the Judge's Chambers and I asked – I said, "Look, I haven't done nothing wrong." I said, "I've worked too hard to get my kids." I said, "I ain't [sic] done nothing wrong. Can ya'll [sic] give me probation or something so I won't lose my kids." The Judge looked at [the State] like it was all right and [trial counsel] told me – I mean, I didn't have a chance so we come [sic] back out. Somehow, I don't know how it was, somehow the Judge said something about an appeal. I know I heard him say he would let me appeal it.

Despite the Petitioner's testimony to the contrary, a review of the transcript shows that the trial court made no statements regarding the Petitioner's right to appeal during the in camera conference. In addition, trial counsel's only statement regarding an appeal during the conference was a statement making sure that the Petitioner understood that he would likely be incarcerated during the pendency of his appeal.

Nonetheless, we are faced with the question of whether the events as a whole during this in camera conference rose to the level of coercion, thereby making the Petitioner's guilty plea involuntary. The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligent. Id. These factors include "the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Id. (citing

Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)). Here, the Petitioner claimed that he attended special education classes in high school; however, this testimony was uncorroborated. In addition, the record makes it clear that although the Petitioner had obtained his commercial driver's license and worked as a truck driver during the pendency of his case, he was still declared indigent and was appointed a public defender. The record also shows that the Petitioner had a prior record composed of several misdemeanors.

Regarding counsel's representation of the Petitioner, trial counsel testified that he often met with the Petitioner in person to discuss his charges and the strengths and weaknesses of his case. A review of the transcript from the in camera conference and the plea submission hearing shows that both trial counsel and the trial court explained to the Petitioner that if he were found guilty at trial, he would receive a more severe sentence than he would receive under the plea agreement. At the post-conviction hearing, the Petitioner acknowledged that he would receive an eight to twelve year sentence for the drug charge if he were found guilty at trial. The record establishes that following the in camera conference, the Petitioner talked to his mother and did not make the final decision to enter his guilty plea until after the jury was chosen for his trial.

At the close of the post-conviction hearing, the trial court stated the following regarding the Petitioner's allegation of coercion:

> [There is n]o evidence whatsoever that [trial counsel] coerced or induced the plea by anything other than the fear of what was going to happen; the fear of significant punishment if, in fact, the Defendant was convicted. You know, the record shows that – you know, his complaint about being coerced into pleading guilty is, you know – the Court is as responsible for the things that were said to him as his attorney is and you always worry when you're trying to do something – as a Judge when you're trying to do something you think is in a Defendant's best interest because, you know, you never know – you don't know what's going to happen . . . . I, frankly, just from an academic standpoint, was looking forward to this case because it was so obvious from the various hearings that we had had that [trial counsel] was fully loaded and ready to engage and, quite frankly, after the conference that we had in the Chambers was surprised to hear that the Defendant had changed his mind.

After reviewing the record and applying the factors as stated in Blankenship, we conclude that the Petitioner was not coerced into entering his guilty plea. However, we do not condone the practice of taking a defendant into chambers to question him about a plea agreement. This could easily result in an unknowing and involuntary plea, and therefore, it is not advisable.

-8-

The Petitioner also argues that the trial court's statements after the in camera conference prevented him from understanding that he would be forfeiting his right to appeal the court's pre-trial denial of his suppression motion at the time he entered his plea of guilt. Specifically, he cites to the following statement of the court: "If you had a trial and something had happened that you didn't think was fair you would have had a right to appeal that to the next higher court. You give up that right also." The Petitioner asserts that this statement "would not lead one to believe that they had given up the right to appeal decisions made 'before' trial." A review of the transcript from the guilty plea hearing shows that just prior to the Petitioner's entry of his guilty plea, the trial court informed the Petitioner in open court that he was relinquishing his right to a trial by pleading guilty. The court then said, "If I accept your plea, even though I notice that it is what is known as a best interest plea[,] that will close the matter forever with regard to your guilt or innocence." Finally, the court asked him if he had any questions about the rights that he would be waiving by entering a guilty plea, and the Petitioner responded negatively. After reviewing the record from the guilty plea hearing, we conclude that the trial court's statements made prior to the Petitioner's entry of a guilty plea were not confusing regarding his inability to appeal the suppression issue. Accordingly, we conclude that the Petitioner is not entitled to relief on this issue.

Third, the Petitioner argues that the State, during this conference, promised him that he would be paroled after serving thirty percent of his sentence under the terms of the plea agreement. A review of the record shows that although the State mentioned that he would be given a thirty percent release eligibility as a Range I, standard offender pursuant to the agreement, there was no guarantee or promise that the Petitioner would, in fact, be paroled after serving thirty percent of his six-year sentence. Accordingly, the Petitioner is also not entitled to relief on this issue.

**II. Ineffective Assistance of Counsel.** The Petitioner also contends that trial counsel provided ineffective assistance of counsel in failing to properly advise him of his right to certify a question on appeal and in failing to in fact certify a question regarding the suppression issue at the time he entered his guilty plea. In addition, the Petitioner argues that the trial court was ineffective in failing to subpoena any witnesses at trial and to investigate the termination of the investigating officer in his case. Finally, he contends that trial counsel was ineffective in allowing the trial court to question him during the in camera conference about whether he possessed drugs at the time of his arrest. The State responds that the Petitioner failed to establish that counsel was ineffective. We agree with the State.

Vaughn repeated well-settled principles applicable to claims of ineffective assistance of counsel:

The right of a person accused of a crime to representation by counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 9, of the Tennessee Constitution. Both the United States Supreme Court and this Court have recognized that this right to representation encompasses the right to reasonably effective assistance, that is, within the range of competence demanded of attorneys in criminal cases.

202 S.W.3d at 116 (internal quotations and citations omitted).

In order to prevail on an ineffective assistance of counsel claim, the Petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. Id. (citing Strickland v. Washington, 466 U.S. 668, 687 (1984); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996) (citing Strickland, 466 U.S. at 697).

A petitioner successfully demonstrates deficient performance when the clear and convincing evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." Id. at 369 (citing Strickland, 466 U.S. at 688; Baxter, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 370. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694). In order to satisfy the "prejudice" requirement in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

The Petitioner first argues that trial counsel was ineffective in failing to advise him of his right to certify a question on appeal and failing to certify a question regarding the suppression issue. Tennessee Rule of Criminal Procedure 37(b)(2)(A) allows for an appeal from any order or judgment on a plea of guilty or nolo contendere if the defendant reserves the right to appeal a certified question of law that is dispositive of the case, so long as the following four requirements are met:

(i) the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review;
(ii) the question of law is stated in the judgment or document so as to identify clearly the scope and limits of the legal issue reserved;
(iii) the judgment or document reflects that the certified question was expressly reserved with the consent of the state and the trial court; and
(iv) **the judgment or document reflects that the defendant, the state, and the trial court are of the opinion that the certified question is dispositive of the case[.]**

Tenn. R. Crim. P. 37(b)(2)(A) (emphasis added). The record shows trial counsel testified that he did not think the State would agree to allow him to certify a question on appeal regarding the suppression of evidence, given that the plea agreement dismissed three counts of the indictment in this case as well as five other charges in separate indictments. Moreover, trial counsel's testimony regarding the State's refusal to allow a certified question was not refuted by the Petitioner at the post-conviction hearing.

Second, the Petitioner contends that trial counsel was ineffective in failing to investigate the termination of the investigating officer and in failing to subpoena witnesses at trial. We agree with the State that the Petitioner has waived these issues for failing to make an argument with supporting authority. "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Tenn. Ct. Crim. App. R. 10(b). Moreover, a brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on."). Tenn. R. App. P. 27(a)(7). Failure to comply with this basic rule will ordinarily constitute a waiver of the issue. State v. Hammons, 737 S.W.2d 549, 552 (Tenn. Crim. App. 1987). Waiver notwithstanding, we further note that the Petitioner failed to present any witnesses at the post-conviction hearing that he argues should have been subpoenaed by trial counsel. This court has concluded that "[w]hen a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). The presentation of witnesses at the post-conviction hearing is the only way for the petitioner to establish:

(a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case,

-11-

(b) a known witness was not interviewed,

(c) the failure to discover or interview a witness inured to his prejudice, or

(d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the petitioner.

Id. The post-conviction court determined that the Petitioner was not entitled to relief on this issue. Upon review, we conclude that the Petitioner has not met his burden of establishing that trial counsel failed to investigate the termination of the arresting officer or failed to subpoena witnesses at trial.

Third, the Petitioner argues that trial counsel was ineffective in allowing him to be questioned by the trial court at the in camera conference about whether he possessed drugs at the time of his arrest. The State argues that the Petitioner has waived this issue by failing to provide argument to support his claim, and we agree. See Tenn. Ct. Crim. App. R. 10(b); Tenn. R. App. P. 27(a)(7). We also agree that the Petitioner failed to show that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also Serrano v. State, 133 S.W.3d 599, 605 (Tenn. 2004).

The ruling of the post-conviction court is supported by the record. We conclude that the Petitioner has not met his burden of proving that his plea was unknowing and involuntary or that he received ineffective assistance of counsel.

**Conclusion.** Upon review, we affirm the judgment of the post-conviction court.

_____
CAMILLE R. McMULLEN, JUDGE